IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

MARK D.  DUNDEE                                                                PLAINTIFF

v.                                   Civil No.: 4:08-cv-4127

SHERIFF LINDA RAMBO *et al.*                                           DEFENDANTS

### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

Mark D.  Dundee, an inmate in the Bowie County Correctional Center, in Texarkana, Texas, filed this civil rights action under 42 U.S.C. § 1983.  Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3) (2005), the Honorable Harry F.  Barnes, United States District Judge for the Western District of Arkansas, referred this case to the undersigned for the purpose of making a report and recommendation.

Now before this Court is the Motion for Summary Judgment, ECF No.  34, filed by Defendants.  The Court has also considered the Memorandum Brief in Support for the Motion for Summary Judgment, ECF No.  35, and the Statement of Facts in Support.  ECF No.  36. Additionally, at the request of the Plaintiff, the Court submitted to Plaintiff a questionnaire, which would serve as Plaintiff's response to the Motion for Summary Judgment.  ECF Nos.  37, 38.  The Court has received and considered Plaintiff's response.  ECF No.  48.

Plaintiff has also submitted a document titled "Motion for Summary Judgment."  ECF No.  49.  However, this document does not appear to make a motion for summary judgment, but rather to be a statement by Plaintiff regarding his case.  As such, the Court will construe Plaintiff's Motion for Summary Judgment, ECF No.  49, as a supplement to his Response to the Motion for Summary Judgment, ECF No.  48, and consider it as such.

I.    **Background**

As this case is before the Court on Defendants' Motion for Summary Judgment, the Court will recite the facts pled by the non-moving party, the Plaintiff.  Plaintiff has brought this action against the Defendants in both their official and individual capacities.  ECF No.  48.

Plaintiff alleges he was moved out of the medical pod for no reason, was forced to sleep on the floor, was denied adequate clothing, denied medical care, was denied adequate sanitation, and was subjected to inadequate medical staffing, overcrowding, and threats of violence.  *Id.* Plaintiff also alleges the facility allowed contraband in the hands of inmates, had non-functioning sprinklers and smoke detectors, and inadequately trained guards, as well as provided no testing procedures for tuberculosis ("TB").  *Id.*

Plaintiff states he was moved from medical housing to another pod where he was forced to sleep on the floor.  ECF No.  48, ¶ 2.  Plaintiff slept on the floor for "about a week."  *Id.*  at ¶ 2 (a). Plaintiff was given a mat for sleeping, but it was one "with not much cushion.  Well used."  *Id.*  at ¶ 2(b).  Plaintiff states he now has bad knees and back and that sleeping on the floor did not help those problems.  *Id.*  at ¶ 2(c).  Plaintiff further states he suffered mental anguish because he "never got proper rest" and had "pain and suffering" as a result.  *Id.*

Plaintiff did seek medical care for his injuries, but it was some time after the time he was removed from the medical pod and began sleeping on the floor.  ECF No.  48, ¶ 2.  Plaintiff states he waited to obtain medical care because he did not need medical services at the time, as his injuries did not develop until later, and he could not afford to pay for any medical services.  *Id.*  When Plaintiff went to the Texas Department of Corrections he started receiving medical attention for his back problems and right knee.  *Id.*

Plaintiff states there was no regular sanitation of the Miller County Detention Center and he did not have access to cleaning supplies. *Id.* at ¶¶ 3, 4. Furthermore, cleaning supplies were very rarely available even upon request and only a mop and broom would be available, rarely any chemicals for cleaning. *Id.* at ¶ 4.

Plaintiff regularly received his medications, but did not always receive his medications on time; however, he was not physically harmed by this, only mentally harmed. ECF No. 48, ¶ 5(a). Plaintiff also suffered "mental worry" regarding a lack of TB testing on inmates. *Id.* at ¶ 5(b). TB testing was not done on a regular basis, but only when a person appeared to be ill. *Id.* Plaintiff states he was not harmed, but could have been re-exposed to TB. *Id.*

Plaintiff also states there was no regular laundry schedule and he was forced to wear the same clothing for weeks, causing rashes. *Id.* at ¶ 5(c). Plaintiff was also issued a shirt and pants, but no towel, underwear, or socks. *Id.* at ¶ 5(b)(i). When laundry was done in Miller County, the inmates would place their clothes in a bag and wait until the laundry was returned. ECF No. 48, at ¶ 5(b)(i). Plaintiff was also not issued a towel. *Id.* at ¶ 5(b)(ii). He used his shirt to dry himself after showers until another inmate left and he then received a towel. *Id.*

Regarding the overcrowding which "occurred [sic] in every Pod," Plaintiff was not physically harmed, but was mentally harmed. *Id.* at ¶ 5(d). Plaintiff also stated there were many conflicts over use of facilities and the issuing of food, including one instance when Plaintiff was verbally threatened by another inmate with violence. *Id.* at ¶ 6.

Plaintiff also states contraband was brought into the jail, including weapons. ECF No. 48, ¶ 7. Plaintiff never informed Defendants about the contraband, but "the staff knew." *Id.* Plaintiff was not harmed by any contraband which was brought into the facility. *Id.*

-3-

Plaintiff was injured by a faulty mop bucket and "smashed [his] finger in it." *Id.* at ¶ 8. Plaintiff states he received a tetanus shot from the nurse and a bandage. *Id.* Plaintiff was released from the Miller County Detention Center about a week after the incident and eventually lost his fingernail from the injury. ECF No. 48, ¶ 8. He did not file any medical grievances and did not seek any further medical attention. *Id.*

Plaintiff also states he filed a grievance, but received no response. *Id.* at ¶ 9. The content of the grievance is unclear, but Plaintiff stated it was related to unfair treatment, problems in the pod, and wanting assistance. *Id.* However, he did not know if there was a grievance procedure to be followed at Miller County at the time. *Id.* There was a medical request procedure at Miller County, but Plaintiff contends it "didn't work right" although he "can't remember exactly how it worked." *Id.*

Plaintiff notified the staff about his Hepatitis C diagnosis, prior positive TB test and mental stress when he was processed into the facility. ECF No. 48, ¶ 12. The facility doctor placed Plaintiff on a common medication for treating depression, Celexa at 10 mg, when Plaintiff entered the facility. *Id.* Plaintiff was placed into the medical pod on intake, but did not know if he was placed in the medical pod on doctor's orders or if he was on doctor's orders to remain in the medical pod. *Id.* However, he was seen by the doctor and nurse after taken out of the medical pod, but he was not moved back by either provider. *Id.*

Plaintiff further alleges the lack of functional fire sprinklers caused him to inhale smoke during a fire at the facility. *Id.* at ¶ 14. Plaintiff states the defendants knew the sprinklers were not functional, and other inmates "tore it up, so they could smoke." *Id.* Plaintiff provides no documentation of any request for medical treatment or harm from inhaling the smoke, nor does he

allege he sought any medical treatment.

Plaintiff also states newly hired officers did not appear to be trained or oriented well.  ECF No.  48, ¶ 15.  Plaintiff "witnessed a lot of laziness and neglect" and does not believe the officers were trained at all.  *Id.*  He further states the staff acted in an unprofessional manner.  *Id.*

Finally, Plaintiff alleges inmates were not housed properly due to medical conditions, but instead were placed anywhere in the facility.  *Id.* at 20.  Additionally, medical staff was not at the facility twenty-four hours a day.  *Id.*  Plaintiff states he suffered "mental anguish" from the "fear of the unknown" since the medical staff was not present at all times.  ECF No.  48, ¶ 20.

Plaintiff requested legal documentation for charges he was arrested for, burglary, and states he was denied this material.  *Id.*  at 21.  Plaintiff further contends did not have counsel regarding those charges.  *Id.*

## II.    **Applicable Law**

Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56 (c). The court views the evidence and the inferences which may be reasonably drawn from the evidence in the light most favorable to the nonmoving party.  *See Adkison v. G.D. Searle & Co.*, 971 F.2d 132, 134 (8th Cir. 1992).  The moving party has the burden of showing the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## III.    **Discussion**

### I.    **Official Claims**

Plaintiff has sued Defendants in their official capacities.  Plaintiff's official capacity claims are

tantamount to suing Miller County. Official-capacity liability under 42 U.S.C. § 1983 occurs only when a constitutional injury is caused by "a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Because *Monell* specifically rejected liability based solely on respondeat superior, *id.* at 691, "[a] supervisor is not vicariously liable under 42 U.S.C. § 1983 for an employee's unconstitutional activity." *White v. Holmes*, 21 F.3d 277, 280 (8th Cir. 1994). Rather, official-capacity liability must be based on deliberate indifference or tacit authorization. *Id.*

Policy or custom official-capacity liability is imposed by 42 U.S.C. § 1983 only for "constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision making channels ." *Monell*, 436 U.S. at 690-91. In his Response to the Motion for Summary Judgment, ECF No. 48, Plaintiff states the custom or policy leading to the violation of his constitutional rights was "almost everything ongoing, during that time frame, was a violation. I can['ʼ]t recall everything?" Clearly, such statements do not state a custom or policy violation. However, Plaintiff does also state he did not feel there was adequate training provided to the staff at Miller County.

In a claim for inadequate training, the plaintiff must show: (1) the city's training practices are inadequate; (2) the city was "deliberately indifferent" to the rights of others in adopting them, such that the "'failure to train reflects a deliberate or conscious choice by a municipality;'" and (3) an alleged deficiency in the city's training or supervisory procedures actually caused the plaintiff's injury. *Andrews v. Fowler*, 98 F.3d 1069, 1076 (8th Cir. 1996) (*quoting City of Canton v. Harris*, 489 U.S. 378, 389 (1989)). The municipal entity will be held liable if " 'in light of the duties assigned to

specific officers . . .the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been indifferent to the need.'" *Id.* (*quoting Canton*, 489 U.S. at 390).

Plaintiff has presented no evidence regarding the training practices of Miller County and how they were inadequate.  In fact, Plaintiff has only stated that he "watched laziness and neglect" by some of the officers and those officers at times "acted unprofessional."  ECF No.  48.  Moreover, Plaintiff has submitted his only harm was "mental" harm, and thus can draw no causal link between any inadequate training and any harm he suffered.   He has not stated a constitutional violation.

Finally, to the extent Plaintiff is seeking monetary compensation for any official capacity claims, those claims are subject to sovereign immunity.  The Eleventh Amendment to the United States Constitution bars claims for monetary relief by private parties against a state, a state agency or an employee of a state in his or her official capacity.  *See, e.g., Edelman v. Jordan*, 415 U.S. 651, 663 (1974) ("a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment.").  The Eleventh Amendment prevents the plaintiff from recovering damages pursuant to 42 U.S.C. § 1983 from state employees in their official capacity because a suit against a public employee in his or her official capacity is considered a suit against the public employer.  *Kentucky v. Graham*, 473 U.S. 159, 165 (1985).  Thus, the State's sovereign immunity bars Plaintiff's claim for monetary relief from the defendant in his official capacity.

Moreover, when a prisoner is no longer subjected to an allegedly unconstitutional or unlawful course of action, the prisoner's claims for declaratory and injunctive relief are moot.  *Pratt v. Corr. Corp. of Am.*, 267 Fed.  Appx. 482, 2008 WL 612571, *1 (8th Cir. 2008) (table decision)

(concluding inmate's 1983 claims for declaratory and injunctive relief were moot when he was transferred to another facility and was no longer subject to alleged unlawful conditions); *Smith v. Hundley*, 190 F.3d 852, 855 (8th Cir.1999) (section 1983 claims for declaratory and injunctive relief are moot when plaintiff is no longer subject to alleged unlawful conditions). Plaintiff's claims for injunctive relief is now moot because he is no longer incarcerated in the Miller County facility. Plaintiff's official-capacity claims should be dismissed in their entirety.

## II.   Individual Capacity Claims

### i.   Unconstitutional Conditions of Confinement

Plaintiff has alleged he was subjected to inhumane conditions of confinement when Defendants: (1) forced him to sleep on the floor with a mattress for a week; (2) denied him adequate sanitation; (3) subjected him to overcrowded conditions; (4) denied him a functional fire sprinkler system; (5) subjected him to threats of violence, and (6) denied him adequate clothing, including towels. The Supreme Court has clarified that the "Constitution does not mandate comfortable prisons," and that only "extreme deprivations" that deny "the minimal civilized measure of life's necessities are sufficiently grave to form the basis" of a § 1983 claim. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992); *Rhodes v. Chapman*, 452 U.S. 337, 347-49 (1981). Plaintiff must show that Defendants were deliberately indifferent, that is, that they knew of, and yet disregarded, an excessive risk of harm to plaintiff's health and safety. *Farmer v. Brennan*, 511 U.S. 825, 827 (1994).

Technically, Plaintiff's claims are analyzed under the Fourteenth Amendment's due process clause, instead of the Eighth Amendment's cruel and unusual punishment clause, because he was a pretrial detainee, and not a convicted prisoner at the time of the incidents. *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979). However, the Eighth Circuit has applied the same standard to conditions of

confinement claims based on either the Fourteenth or Eighth Amendment.  *See Butler v. Fletcher*, 465 F.3d 340, 345 (8th Cir. 2006).

### a. Sleeping on the Floor

No constitutional violation is stated when a detainee is required to sleep on the floor when he is provided with a mattress.  *See e.g., Ferguson v.  Cape Girardeau County*, 88 F.3d 647, 650 ("Nor is the use of a floor mattress for thirteen nights, when viewed in the totality of the circumstances, a violation of Ferguson's due process rights."); *Roop v. Squadrito*, 70 F. Supp. 2d 868, 874 (N.D. Ind. 1999)(Requiring inmate to "sleep on a floor mattress for an extended period of time would be a lay-down case for the defendants since several courts in this circuit have found that the failure to provide an inmate with a bunk is not a constitutional deprivation.") (citations omitted); *Hines v. Sheahan*, 845 F. Supp. 1265, 1269 (N.D. Ill. 1994)("[R]equiring an inmate to sleep on a mattress on the floor does not itself rise to the level of a constitutional violation."); *Powell v. Cook County Jail*, 814 F. Supp. 757, 759 (N.D. Ill.1993) ("'[N]othing in the Constitution requires elevated beds for prisoners.'" (citations omitted)).

Plaintiff has clearly stated he was provided a mat to sleep on and was only placed on the floor for a week.  Additionally, although Plaintiff claims he later had knee and back problems from sleeping on the floor, Plaintiff has provided no medical evidence that his knee and back injuries were somehow related to sleeping on the floor.  The Court also notes the alleged injuries occurred after he was no longer sleeping on the floor, thus making it impossible for Defendants to know or expect that placing Plaintiff on the floor would cause injury and there is no evidence of any deliberate indifference by Defendants.

b.     **Adequate Sanitation**

Conditions that "deprive inmates of the minimal civilized measures of life's necessities" are unconstitutional. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). "[I]nmates are entitled to reasonably adequate sanitation, personal hygiene, and laundry privileges, particularly over a lengthy course of time." *Howard v. Adkison*, 887 F.2d 134, 137 (8th Cir. 1989).

With respect to sanitation, the Eighth Circuit has stated that "[w]hile reviewing the totality of circumstances" of the plaintiff's confinement, we must "focus on the length of his exposure to unsanitary conditions and how unsanitary the conditions were." *Owens v. Scott County Jail*, 328 F.3d 1026, 1027 (8th Cir. 2003) (Defendant not entitled to judgment as a matter of law where detainee slept next to a toilet for five weeks).

Plaintiff stated he entered into Miller County on September 10, 2008, and was moved from the medical pod to the max unit, where his allegations regarding sanitation appear to occur, on September 29, 2008. In a supplement to his Complaint, Plaintiff stated he was released on December 24, 2008. ECF No. 8. His Complaint was dated December 5, 2008, and the sanitation issue appeared to still be ongoing at that time. Thus, the Court will assume the sanitation allegations occurred from September 29, 2008 until December 24, 2008 - approximately three months.

When asked to describe how the Miller County Detention Center was "unsanitary," Plaintiff stated that "regular sanitation didn['] happen. There was no order, at all. Noone cared if it was cleaned, or not [sic]." ECF No. 48, ¶ 3. Plaintiff has presented no evidence or specific allegations of the uncleanliness of his cell or the jail in general, other than to allege that chemical cleaners were not always available to inmates. Moreover, Plaintiff has failed to identify any harm he suffered as a result of the allegedly unsanitary conditions of confinement. *See Williams v. Harmon*, 2009 WL

-10-

1690735 (E.D. Ark. 2009) (holding that plaintiff's failure to give specific facts related to why the cleaning supplies are inadequate, the condition of his cell, and how he was actually harmed by the alleged denial of adequate cleaning supplies to be critical flaws in a conditions of confinement claim).

### c.    Fire Sprinklers

Plaintiff has alleged the sprinkler system did function during a fire in the Miller County correctional facility. A § 1983 action is a type of tort claim, and a plaintiff must suffer some actual injury before he can receive compensation, and the injury must be more than *de minimus*. *Irving v. Dormire*, 519 F.3d 441, 448 (8th Cir. 2008) (internal citations omitted). Even if a malfunctioning sprinkler system constitutes a substantial risk of serious harm, Plaintiff has described no injury he sustained as a result of the fire, other than "smoke inhalation." Plaintiff provides no evidence he sought medical care or needed to do so as a result of the smoke inhalation. *See Pitman v. Busby*, 2009 WL 2462512 (E.D. Ark. 2009) (holding Plaintiff failed to state a conditions of confinement claim when he did not allege he suffered any specific injury as a result of a fire set by fellow inmate and exposure to smoke, despite non-functioning sprinklers and fire alarms); *see also Hall v. Phillips*, 2005 WL 3783651 (W.D. Ark. 2005) (holding that lack of sprinkler system did not preclude grant of summary judgment in prison officials' favor on Eighth Amendment claim where there was no fire when inmate was detained at the facility and inmate was never physically harmed).

### d.    Threats of Violence

Plaintiff states he was subjected to one threat of violence due to competition for facilities and food at the Miller County Jail. On October 1, 2008, one day after being moved to the max pod, Plaintiff sent a grievance, which stated it was "dangerous" in the pod and there are "problems arising between inmates over the use of facilities, and receiving our food." ECF No. 1 at 11. This grievance

was marked as received by an unidentified officer, but Plaintiff states he never received any response.

Plaintiff's claim is essentially a failure to protect claim arising under the Eighth Amendment. An Eighth Amendment claim for failure to protect is comprised of two elements.  First, an "inmate must show that [he] is incarcerated under conditions posing a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  Second, the inmate must establish that the defendant prison official recklessly disregarded that risk. *Jackson v. Everett*, 140 F.3d 1149, 1151 (8th Cir. 1998).

Plaintiff has not presented any evidence he was incarcerated under a serious risk of harm.  In fact, Plaintiff states he was threatened on only one occasion.  Furthermore, the threat was never carried out and Plaintiff did not actually suffer any harm.  Additionally, while Plaintiff indicates the threat was over facilities and food, Plaintiff has made no allegation he did not receive adequate food and access to facilities.

Therefore, while Plaintiff did submit a grievance regarding what he perceived as a threat, he has shown no personal involvement or knowledge by any of the Defendants, and he was not harmed as the threat was not carried out and he has not shown he was at a "substantial risk" for harm to occur.  "Because a § 1983 action is a type of tort claim, general principles of tort law require that a plaintiff suffer some actual injury before he can receive compensation." *Irving v. Dormire*, 519 F.3d 441, 448 (8th Cir. 2008) (*citing Carey v. Piphus*, 435 U.S. 247, 253-55(1978)).

**e.    Adequate Clothing and Towels**

Plaintiff has alleged that when he was booked into Miller County he was issued a shirt and pants, but no towel, underwear, or socks.  Plaintiff eventually received a towel when another inmate left.  Plaintiff does not allege he suffered any harm from a lack of towel, underwear, or socks.  As

-12-

stated above, Plaintiff must allege some actual injury.  *Irving*, 519 F.3d at 448 (citation omitted).

Further, Plaintiff alleges there was no regular laundry schedule and that he suffered rashes from his clothing not being cleaned properly.  Claims under the Eighth Amendment require a compensable injury that is more than *de minimis*.  *Cummings v. Malone*, 995 F.2d 817, 822-23 (8th Cir. 1993) and *Prater v. Dahm*, 89 F.3d 538, 541 (8th Cir. 1996). "No clear line divides *de minimis* injuries from others." *Irving*, 519 F.3d at 443, (*comparing Hudson v. McMillian*, 503 U.S. 1, 10 (1992) (a cracked dental plate, loosened teeth, bruises, and swelling were more than *de minimis*) and *Foulk v. Charrier*, 262 F.3d 687, 692, 700-01 (8th Cir. 2001) (use of pepper spray without cause was greater than *de minimis*). *See Wertish v. Krueger*, 433 F.3d 1062, 1067 (8th Cir. 2006) (noting *de minimus* injuries include "minor scrapes and bruises and the less-than-permanent aggravation" of a prior injury); and *United States v. Miller*, 477 F.3d 644, 647 (8th Cir. 2007) (injuries consisting of a bruised and swollen left eye and reddish-purpose face sufficient to allow a jury to reasonably determine officer's use of force violated the Eighth Amendment).

Plaintiff has presented no allegations or evidence he sought any medical treatment for his rash, or how long he suffered the rash, and has not shown his injury was anything more than *de minimis* and therefore not of constitutional magnitude. *See Evans v. Clanton*, 2006 WL 1382315 (W.D. Mo. 2006) (holding a rash from pepper spray which was controlled and had no long-term effects to be *de minimis*).  This *"de minimis"* standard has been defined as requiring a "common-sense category approach to the injury; would the injury require or not require a free world person to visit an emergency room, or have a doctor attend to, give an opinion, diagnosis and/or medical treatment for the injury?" *Luong v. Hatt*, 979 F. Supp. 481, 486 (N.D. Texas 1997). In *Luong*, the Court held that an scratches, minor abrasions, and contusions constituted a *de minimis* injury, stating, "[a] physical

-13-

injury is an observable or diagnosable medical condition requiring treatment by a medical care professional. It is not a sore muscle, an aching back, a scratch, an abrasion, a bruise, etc., which lasts even up to two or three weeks."

Although the *Siglar* case concerned an Eighth Amendment allegation of excessive force, and the *Luong* case concerned an Eighth Amendment allegation of failure to protect, the same requirements have been applied to conditions of confinement claims. *See Burgie v. Harris*, 2008 WL 90016 (E.D. Ark. 2008) (holding plaintiff's conditions of confinement claim should be dismissed where plaintiff presented no evidence of physical injury suffered by the alleged conditions of confinement and defining physical injury as one that is greater than *de minimis*.).

Although the Eighth Amendment's prohibition of cruel and unusual punishment bars more than physical torture, "discomfort compelled by conditions of confinement, without more, does not violate the amendment." *Smith v. Coughlin*, 748 F.2d 783, 787 (2d Cir.1984) (*quoting Jackson v. Meachum*, 699 F.2d 578, 581 (1st Cir. 1983)). Therefore, Plaintiff's conditions of confinement claim should be dismissed.

### f.    Overcrowded Conditions

An allegation of overcrowding, by itself, does not create a due process violation, and plaintiff does not allege that the overcrowding led to deprivations of food, medical care or sanitation, beyond what is discussed, *supra*. *Patchette v. Nix*, 952 F.2d 158, 162 (8th Cir. 1991). Thus, any remaining claims relative to overcrowded conditions should be dismissed.

### g.    Regulations

Finally, to the extent that Plaintiff attempts to assert a claim for violation of unspecified regulations, the Court notes that such claim does not allege a constitutional violation. *See Gardner*

-14-

*v. Howard*, 109 F.3d 427, 430 (8th Cir.1997)(no § 1983 liability for violation of prison policy).

### ii.    Denial of Medical Care

In order to state a cognizable claim for denial of medical care, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). The deliberate indifference standard includes "both an objective and a subjective component: 'The [plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.' " *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir.  2000)(*quoting Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir.1997)).   Additionally, "'[t]he prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation.'" *Jolly*, 205 F.3d at 1096 (*quoting Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995)).  *See also Gregoire v. Class*, 236 F.3d 413, 417 (8th Cir. 2000)("To establish a constitutional violation, it is not enough that a reasonable official should have known of the risk, a plaintiff must establish that the official in question did in fact know of the risk.").

"Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). "A medical need is serious if it is obvious to the layperson or supported by medical evidence." *Moore v. Jackson*, 123 F.3d 1082, 1086 (8th Cir.  1997) (per curiam) (internal quotation and citation omitted). "[T]he failure to treat a medical condition does not constitute punishment within the meaning of the Eighth Amendment unless prison officials knew that the condition created an excessive risk to the inmate's health and then

-15-

failed to act on that knowledge." *Long v. Nix*, 86 F.3d 761, 765 (8th Cir. 1996). The United States

Court of Appeals for the Eighth Circuit has held:

> As long as this threshold is not crossed, inmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment. Deliberate indifference may be demonstrated by prison guards who intentionally deny or delay access to medical care or intentionally interfere with prescribed treatment, or by prison doctors who fail to respond to prisoner's serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 103 (1976). Mere negligence or medical malpractice, however, are insufficient to rise to a constitutional violation. *Id.* at 106.

*Dulany*, 132 F.3d at 1239. *See also Tlamka v. Serrell*, 244 F.3d 628, 633 (8th Cir. 2001).

### a.   Finger Injury

Plaintiff has alleged he was denied medical care in the form of a finger injury when he

"smashed" his finger in a faulty mop bucket. He states the nurse gave him a tetanus shot and a

bandage, but he later lost the nail on that finger. Plaintiff states he did not seek additional medial

care, and he did not seek any medical care after leaving Miller County a week later.

Clearly, Plaintiff's claim is not a denial of medical care claim, but a disagreement with the

recommended medical treatment. *Pietrafeso v. Lawrence County*, 452 F.3d 978, 983 (8th Cir. 2006)

(deliberate indifference requires more than gross negligence or disagreement with treatment

decisions). Moreover, Plaintiff has failed to show how his injury was a "serious" medical need, and

how any Defendant was deliberately indifferent to his injury, as he was provided with care.

### b.   Medical Staffing

Plaintiff has also alleged there was inadequate medical staffing because there were not medical

personnel at the jail on a twenty-four hour a day basis. Plaintiff states he suffered "mental anguish"

due to "fear of the unknown." Plaintiff offers no evidence of his mental anguish, nor does he give any

reason for why he would have mental anguish over a lack of medical personnel at the jail around the clock, as he was not in need of medical care and then denied.  *See Hudson v. McMillian*, 503 U.S. 1, 8-9 & 16-17 (1992) (Blackmun, J., concurring) (*de minimis* infliction of psychological pain is not actionable under the Eighth Amendment).

Furthermore, Plaintiff has provided no evidence that the defendants were aware of any lack of staffing and were thus deliberately indifferent.  Plaintiff has also failed to provide any evidence he was denied care and harmed due to a shortage of medical staff.

### c.    TB Testing

Plaintiff contends his rights were violated because Defendants did not test for TB or have TB lighting in the facility.  Plaintiff states he was "mentally" harmed by the lack of testing because he tested positive in 2005 and was told he would always carry the virus, and if he was re-exposed, the medication would not longer be effective.  Plaintiff has submitted no evidence to suggest he was actually exposed to TB in Miller County or that he faced a substantial risk of serious damage to his health.  *See e.g., Helling v. McKinney*, 509 U.S. 25, 35 (1993); *see also, Hudson*, 503 U.S. at 8-9 & 16-17 (holding *de minimums* infliction of psychological pain is not actionable).

Plaintiff has further made no showing that there were any inmates in Miller County infected with TB, other than himself, or that any of the named Defendants acted with a sufficiently culpable state of mind.  In sum, there is no genuine issue of fact as to whether Defendants were deliberately indifferent to Plaintiff's existing serious medical needs or that there was an unreasonable risk of serious damage to his future health because of the failure to provide a skin test for TB or failure to provide UV lights in the facility.

-17-

### iii.    Removal from Medical Pod

Plaintiff has stated his claims mostly center around his removal from the medical pod and placement into the "max" or general population pod.  Plaintiff does not know if there were any doctor's orders for him to be placed in the medical pod, but does state he was evaluated by both the nurse and doctor after being placed into the max pod, and was never moved back to the medical pod.

Detention center officials have discretion in classifying prisoners and determining where they should be housed within the facility.  *See Hewitt v. Helms*, 459 U.S. 460, 468 (1983).  Plaintiff has not stated any facts rising to a constitutional violation.  The decision to place him in the max pod is not alleged to be a disciplinary matter, or punishment for the crimes he was being charged with, rather it was an administrative strategy.  Thus, those facts do not state a claim of constitutional dimension and should be dismissed.

### iv.    Exposure to Contraband

Plaintiff states weapons and other contraband was brought into the jail, and the staff knew of this, although Plaintiff did not inform them or anyone else of the issue.  Further, Plaintiff contends he was not harmed, but "could have been."  Again, Plaintiff has alleged no injury, other than (at most) a *de minimius* psychological injury, and no constitutional claim.  *Irving*, 519 F.3d at 448 (citation omitted).

### v.    Denial of Access to the Courts

Finally, Plaintiff has alleged he was representing himself on his state criminal charges of burglary and was denied access to a law library.  Prison officials may not deny or obstruct an inmate's access to the courts to present a claim."  *McMaster v. Pung*, 984 F.2d 948, 953 (8th Cir. 1993) (*citing Bounds v. Smith*, 430 U.S. 817, 821 (1977) and *Johnson v. Avery*, 393 U.S. 483, 485 (1969)).

However, it is clearly established that meaningful access to the courts is broader than access to a law library. *Klinger v. Dep't of Corr.*, 107 F.3d 609, 617 (8th Cir. 1997) (inmate unable to prevail on a denial of access to courts claim even where the denial of access to library was complete and systematic).

Furthermore, in order to proceed with a denial of access to the court claim, a prisoner must demonstrate that he was actually harmed or injured by the defendants' actions. *Lewis v. Casey*, 518 U.S. 343, 355 (1996); *Kind v. Frank*, 329 F.3d 979, 981 (8th Cir. 2003). Specifically, in *Lewis*, the Court explained that "actual injury" means "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Lewis*, 518 U.S. at 348. Plaintiff does not contend that he was actually harmed or injured by the alleged failure to provide him with law library access.

Plaintiff also does not state which Defendant he requested legal materials from, which Defendant denied him legal materials, and does not present any documentation of his request and denial of access to the court. For a defendant to be held liable under 42 U.S.C. § 1983, he must have personally participated in, or had some responsibility for, the particular act which deprived Plaintiff of a constitutionally protected right. *Ellis v. Norris*, 179 F.3d 1078, 1079 (8th Cir.1999) ("despite having been ordered to amend his complaint to clarify how . . . defendants upon whom he sought service had violated his constitutional rights, [plaintiff] failed to allege facts supporting any individual defendant's personal involvement or responsibility for the violations"); *see also Beck v. LaFleur*, 257 F.3d 764, 766 (8th Cir. 2001) (plaintiff failed to allege sufficient personal involvement by any defendant to support a claim); *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985) ("Although it is to be liberally construed, a pro se complaint must contain specific facts supporting its

-19-

conclusions."); *Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974) ("Where a complaint alleges no specific act or conduct on the part of the defendant and the complaint is silent as to the defendant except for his name appearing in the caption, the complaint is properly dismissed.").  Accordingly, the access to the courts claim should be dismissed.

## IV.   Conclusion

Accordingly, it is the Report and Recommendation of the undersigned that the Motion for Summary Judgment, ECF No.  34, be **GRANTED** in its entirety, and Plaintiff's Complaint, ECF No. 1, be **DISMISSED**.

**The parties have fourteen (14) days from receipt of this report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636 (b) (1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**DATED** this **3rd day of February 2011.**

/s/  Barry A.  Bryant
HON.  BARRY A.  BRYANT
U.S.  MAGISTRATE JUDGE